# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release (the "Agreement") is entered into by and between **Howard Cohan** ("Plaintiff") and **BLAZE FL STORE 3, LLC, d/b/a BLAZE PIZZA** ("Defendant") (Plaintiff and the Defendant are collectively referred to as the "Parties"), as follows:

## RECITALS

**WHEREAS**, Plaintiff has filed a lawsuit against Defendants styled *Howard Cohan v. BLAZE FL STORE 3, LLC, a Florida Limited Liability Company, BLAZE FL STORE 5, LLC, a Florida Limited Liability Company and BLAZE FL STORE 6, LLC, a Florida Limited Liability Company, all d/b/a BLAZE PIZZA,* Case No. 9:18-cv-81239-JIC, in the United States District Court, Southern District of Florida, West Palm Beach Division (the "Action"), seeking injunctive relief to remedy alleged accessibility barriers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA");

**WHEREAS**, Defendant does not admit and expressly deny any violations of the ADA or any other federal, state or local law, statute, or ordinance, or that injunctive relief is warranted;

**WHEREAS**, the Parties, desiring to avoid the expense, time effort and uncertainty of further litigation, have agreed to a full and final settlement of all claims that were or could have been raised in the Action, including without limitation all ADA accessibility issues;

**NOW, THEREFORE**, in consideration of the promises, covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to the following terms and conditions as full and final settlement of this Action:

1. Barrier Removal.

A. Within 6 months from the date of execution of this Agreement, Defendant shall cause the modifications outlined in Exhibit A to this Agreement to be made to the BLAZE FL STORE 3, LLC, *d/b/a* BLAZE PIZZA located at: 2146 N. Federal Hwy., Boca Raton, FL 33431 ("Store 3")(hereinafter referred to as "Premises").[1]  The Parties agree for purposes of the Agreement that the remedial measures described in Exhibit A shall comply with existing federal, state, and local laws, rules and regulations relative to ADA barrier removal.  In making these modifications, Defendant may avail itself of any provision applicable under the ADA 2010 Standards and the FAC or their implementing regulations.

---

[1] For the purposes of this Agreement, the following abbreviations shall apply: (1) "ADAAG" refers to the 2010 ADA Standards for Accessible Design, consisting of the 2004 ADA/ABA Accessibility Guidelines for Buildings and Facilities (36 CFR Part 1191, Appendices B and C) along with 28 CFR Part 36, subpart D, the New Construction and Alterations portion of Title III (all hereinafter referred to as the "2010 Standards") and (2) "FAC" refers to the Florida Accessibility Code.  Furthermore, for the purposes of this Agreement, the term "accessible" shall be defined to mean accessible to persons with disabilities.

      B.     If Defendant chooses to provide written notice to Plaintiff's counsel upon completion of the barrier removals, (hereinafter referred to as "Defendant's Notice") then Plaintiff or Plaintiff's counsel shall be permitted to request photographs of the barrier removal for view by Plaintiff's expert and Defendant shall provide those photographs within thirty (30) days of the request. If Plaintiff chooses to inspect Premises after receipt of Defendant's Notice or if Defendant's Notice is not given then after the expiration of the time allowed for Defendant to complete the modifications as set forth in section 1.A. of this Agreement , then Plaintiff or Plaintiff's counsel, expert(s) and/or representative(s) shall be provided access to the Premises to conduct an inspection to verify completion of the work required by this agreement. Plaintiff agrees not to interfere with or interrupt Defendant's operations while inspecting the Premises. Plaintiff's re-inspection shall be at Plaintiff's sole expense, Plaintiff shall not be entitled to compensation or reimbursement from Defendant in connection with such re-inspection except in a subsequent action to enforce this Agreement as set forth herein.

      If after receipt of Defendant's Notice, Plaintiff, Plaintiff's representative(s) claim that any Modifications have not been performed, they shall provide Defendant's counsel with written notice of the Modification(s) that Plaintiff, Plaintiff's representative(s) claim have not been completed (hereinafter referred to as "Plaintiff's Notice"). Within 30 days of Defendant's counsel receipt of Plaintiff's Notice, Defendant shall either (i) complete the modifications set forth in the Notice, (ii) reach a written agreement with counsel for Plaintiff on extension of time for the Defendant to complete any necessary required modifications as set forth in the Notice, (iii) reach an agreement with counsel for Plaintiff that no additional modifications are necessary or required. If the Parties disagree on the matters set forth in Plaintiff's Notice, then after the 30 day period has expired either party will be entitled to file seek any legal or injunctive relief to enforce the terms of this Agreement and the prevailing party will be entitled to attorney's fees and cost. After receipt of the Defendant's Notice, Plaintiff or Plaintiff's representative(s) will have 90 days to complete inspection and if necessary, provide Plaintiff's Notice. If Plaintiff's Notice is not provided to Defendant's counsel within the same 90 day period, then this Premise will be deemed compliant with this Agreement. If Defendant's Notice is not provided to Plaintiff's counsel, and the time allowed for Defendant to complete the modifications as set forth in section 1.A. of this Agreement has expired, then Plaintiff shall not be required to provide written notice to Defendant before seeking any legal and or injunctive relief to enforce the terms of this Agreement and the prevailing party will be entitled to attorney's fees and cost.

    2.    <u>Dismissal of Action</u>.

      Upon execution of this Agreement, the Parties shall sign and file a Joint Notice of Settlement. Upon counsel for Plaintiff receipt of fees and costs, pursuant to Paragraph 3 of this Agreement, the Parties shall sign and file a Joint Stipulation of Dismissal with Prejudice of the Action, and a related proposed Agreed Order adopting the Parties' stipulation and dismissing the case with prejudice.

    3.    <u>Attorneys' Fees & Costs</u>.

      Within ten (10) days of the filing of the Notice of Settlement pursuant to Paragraph 2 above, Defendant shall tender the sum total of Three Thousand Dollars and Zero Cents ($3,000.00), in the form of a check payable to "Feinstein & Sorota, P.A.," trust account (Tax ID No. 65-0109465) as full and final satisfaction of all attorneys' fees, costs and other expenses of any kind incurred by Plaintiffs in connection with the Action. Defendant shall bear its own attorney's fees, litigation expenses, and costs incurred in connection with this Action.

4. <u>Release</u>.

In consideration of the promises and covenants contained in this Agreement, including without limitation the voluntary accessibility remediation and attorneys' fee payment described in Paragraphs 1 and 3 above and in <u>Exhibit A</u>, Plaintiff, Howard Cohan voluntarily and irrevocably releases, acquits and forever discharges all known and unknown legal or equitable claims, demands, liabilities, rights, debts, judgments, damages, expenses, actions, causes of action, or suits of any kind against Defendant and each of the Defendant's, employees, officers, directors, agents, attorneys, predecessors, successors and assigns, attorneys, and each of their respective heirs, executors, administrators, personal representatives, successors and/or assigns (collectively, the "Defendant's Released Parties") with regard to the accessibility of the Premises, which is the subject of this lawsuit that existed up to the date of this Agreement. This release includes all claims against the Defendant's Released Parties that arise under Title III of the ADA, FAC, and/or any other federal, state or local law governing physical access features for persons with disabilities at public accommodation, whether before any federal, state or local agency, in any court of law, or before any other forum relating to the Property. Notwithstanding the foregoing, this release does not bar or otherwise limit claims for breach of any provision of this Agreement, any action taken to enforce any provision of this Agreement or any claim that arises after the date of this Agreement and nothing herein shall be construed as a release of claims that Plaintiff may have with respect to premises or facilities other than the Premises at issue in this Action.

5. <u>General Provisions</u>.

A.   This Agreement and its construction shall be interpreted in accordance with the ADA and, to extent applicable, Florida law, without regard to Florida's conflict of law principles.

B.   If the Premises is sold or closed down (unless it re-opens), or if Defendant cease to own, lease, lease to, or operate the Premises prior to the conclusion of remedial measures contemplated by <u>Exhibit A</u> to this Agreement, as of that date, Plaintiff and Defendant shall no longer be subject to the terms and conditions of this Agreement. Nothing herein shall prohibit Defendant from selling, closing down or otherwise terminating operations at the Premises.

C.   Defendant's obligations set forth in this Agreement are subject to, and contingent upon, obtaining all necessary permits, consents and approvals from local building departments and other relevant governmental authorities, including but not limited to fire and plumbing officials and planning commissions. A good faith effort will be made to obtain the necessary permits, consents and/or approvals. If such permits, consents and/or approvals cannot be obtained by Defendant for the Premises, Defendant will only be required to make the modifications set forth in <u>Exhibit A</u> to the extent that local building departments and other relevant governmental authorities will allow. However, to the extent any needed permits, consents and/or approvals cannot be obtained with respect to any aspect of remediation contemplated by <u>Exhibit A</u> to this Agreement, the Parties agree to cooperate and negotiate in good faith to obtain a reasonable, readily achievable, and workable alternative solution.

D.   The Parties agree that any delays in making the modifications to the Premises, as provided for herein, caused by city or county building officials, inspectors, or permitting departments shall not be deemed to violate the compliance dates contained

herein, provided that Defendant provide notice to Plaintiff, through his counsel, of the reasons for the delay prior to the deadline for completion of the modification and acts in good faith to complete the modifications set for the in Exhibit A within a reasonable time thereafter.

E.  Nothing in this Agreement shall require Defendant to complete any modifications if completion of such modifications are Structurally Impracticable, Technically Infeasible or Virtually Impossible, or if completion of such modification would involve a Significant Loss of Selling or Serving Space, as these terms are defined in the ADA and implementing regulations.

F.  The failure of the Defendant to perform any action required by this Agreement shall not subject it to any liability or remedy for damages or otherwise, or constitute a breach of this Agreement, if such failure is occasioned in whole or in part by an act of God, fires, accidents, earthquakes, hurricanes, tornados, explosions, floods, wars, labor disputes of shortages, riots or sabotage or any similar circumstance beyond Defendant's reasonable control.

G.  The Parties stipulate that the modifications agreed to in this Agreement constitute, for the purpose of Title III of the ADA and FAC, and all local laws, rules and regulations, and their implementing regulations and standards, structurally practicable measures for the removal of existing barriers to access at the Premises, provided that should Defendant, their design professionals, and/or their contractors hereafter receive a determination from any governmental entity that any of the modifications provided above are not compliant with applicable building codes or regulations, Defendant will proceed with such alternative measures that Defendant, their design professionals, and/or their contractors believe in good faith will provide accessibility to the maximum extent feasible, consistent with any such determination by a governmental entity.

H.  This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida irrespective of its choice of law rules.  The Parties agree that venue for any litigation brought to enforce this Agreement shall lie exclusively with the United States District Court for the Southern District of Florida, or, if that court refuses to retain jurisdiction to enforce this Agreement, or if the Court's retained jurisdiction has expired, in any court of competent jurisdiction in Palm Beach County, Florida.

I.  Confidentiality.  The Parties acknowledge and agree that the terms and conditions of this Agreement are and shall remain confidential, and shall not be disclosed to any person or entity, except: (i) as may be required by law; (ii) the Parties may disclose the existence, terms and conditions of this Agreement to its attorneys, and/or accountant, provided that Parties make the person to whom disclosure is made aware of the confidentiality provisions of this Agreement and such person agrees to keep the terms of this Agreement fully confidential; (iii) Defendant may discuss this Agreement with any prospective purchasers of the Premises, tenants of the Premises, owners of any property having any right to use all or any portion of the Premises, lenders, investors, governmental entities, regulatory agencies or authorities, its attorneys, its management, its accountants, its consultants, its contractors or Parties consulted or engaged to perform the modifications herein; (iv) Defendant may share this Agreement as part of a defense to any threatened, potential or actual ADA lawsuit or similar lawsuit against Defendant and/or Premises and with the Parties to any future ADA lawsuit or similar lawsuit involving Defendant and/or Premises that is this the subject of the Agreement; (v) in any action taken to enforce this Agreement and (vi) for determination as to entitlement to and amount of attorneys' fees,

paralegals' fees, costs and expert fees for a prevailing party in an action to enforce the terms of this Agreement. The Parties agree that this Agreement shall not be filed with the Court, but originals or copies shall remain in the possession of the Parties (one each) and shall be filed by Parties for enforcement purposes only, or as may be required by the Court. The Parties, whether by or through their agents, attorneys, or employees, also agree not to solicit or initiate any demand or request by others not a party to this Agreement for any disclosure of the terms, conditions or any facts relating to this Agreement. The Parties further represent that they have not disclosed the terms and conditions of this Agreement to anyone other than their attorneys, accountants, experts and immediate family members.

J.     Nothing in this Agreement shall be deemed and admission of wrongdoing or an admission of any violation of law by any of the Released Parties.

K.     Each person executing this Agreement on a party's behalf, has been duly authorized to sign on behalf of the respective party and to bind each to the terms of the Agreement.

L.     Plaintiff represents and warrants that he has not received any promises or agreements not expressly contained in this Agreement, and is not relying upon any statements or representations made by Defendant, its agents, attorneys, employees, or persons acting on Defendant's behalf concerning the merits of any claims or the nature, extent or duration of any damages, or any other thing or matter, but is relying solely upon their own judgment and this Agreement. Plaintiff further represents and warrants that he has not encountered and is not aware of any other accessibility barriers at the Defendant's owned Premises, other than the barriers alleged in the Action.

M.     The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

N.     The Agreement contain the entire agreement between the Parties with respect to the matters set forth herein, and no other statement, promise, or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written Agreement shall be enforceable. This Agreement fully supersedes any and all prior agreements, statements, representations or understandings pertaining to the subject matter herein. This Agreement shall be binding upon and inure to the benefit and/or detriment of (in the case of obligations) the members, executors, administrators, personal representatives, heirs, successors, and assigns of each party. In the event that a court of competent jurisdiction concludes that any part of this Agreement is unenforceable, such portions shall be severed, and all other portions shall remain valid and enforceable, provided that the Parties may still effectively realize the complete benefit of the promises and considerations conferred hereby.

O.     As a material inducement for Plaintiff and the Defendant's willingness to enter into this Agreement, each further represent and warrant that they have not assigned, transferred, or purported to assign or transfer, to any person, thing, corporation, association or entity whatsoever, any claims released herein.

P.     The Parties acknowledge that each party has reviewed and revised this Agreement and that the normal rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

Q. This Agreement may be executed in counterparts and via facsimile and/or electronic transmission (e.g. an executed agreement scanned into a pdf document and exchanged by email), each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument For the purposes of this Agreement all faxed and scanned signatures shall be accepted as original signatures.

R. No waiver of any breach or other rights under this Agreement shall be deemed a waiver unless the acknowledgment of the waiver is in writing executed by the party committing the waiver. No waiver shall be deemed to be a waiver of any subsequent breach or rights. All rights are cumulative under this Agreement.

S. The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

6. NOTICE

Any notice, correspondence, or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a) If to Defendant:  Stephanie B. Partlow, Esq.
Rachel Beige, Esq.
Cole, Scott & Kissane, P.A.
Esperante Building
222 Lakeview Avenue
Suite 120
West Palm Beach, Florida 33401
Telephone: (561) 383-9228
Fax: (561) 683-8977
Email: Rachel.beige@csklegal.com
Stephanie.partlow@csklegal.com

Claire Perona Murphy
SPERLING & SLATER, P.C.
55 W. Monroe St., Suite 3200
Chicago, Illinois 60603
312.641.4876 (direct ph)
312.641.3200 (firm ph)
312.641.6492 (firm fax)

(b) If to Plaintiff:  Mark D. Feinstein, Esq.
Feinstein & Sorota, P.A.
7901 S.W. 6th Ct.
Suite 305
Plantation, Florida 33324
Tel: (954) 617-1500
Fax: (954) 617-4100
Email: fspa@fspalaw.com

And

Neil S. Odessky, Esq.
Law Offices of Neil S. Odessky, P.A.
7901 S.W. 6th Ct.
Suite 305
Plantation, Florida 33324
Tel: (954) 617-1100
Fax: (954) 617-1300
Email: Neil@nsolaw.com

**THE PARTIES AGREE THAT THIS AGREEMENT CONSTITUTES THEIR ENTIRE AGREEMENT, THAT THEY HAVE READ AND UNDERSTAND ALL ITS PROVISIONS AND REQUIREMENTS, AND THAT THEY ARE ENTERING INTO THIS AGREEMENT VOLUNTARILY AND IN GOOD FAITH.**

_____
HOWARD COHAN
Dated 12/18/2018

BLAZE FL STORE 3, LLC,
*a Florida Limited Liability Company,*
*d/b/a* BLAZE PIZZA

By: Adam Cummins (signature)
Its: President
Dated: December 10, 2018

## EXHIBIT A

**Repairs/Modifications:**

### Store 3
### 2146 N. Federal Hwy., Boca Raton, FL 33431

**A. Unisex Restroom South:**

    a. Provide a gate or door with a continuous opening pressure of no greater than 5 lbs., not to exceed the limits for a person with a disability in compliance with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4.

    b. Provide a swinging door or gate with proper maneuvering clearance that does comply with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.3, 404.2.4 and 404.2.4.1.

    c. Provide sufficient clear floor space around a water closet without any obstructing elements in this space in compliance with the standards set forth in 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1.

    d. Provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in compliance with the standards set forth in 2010 ADAAG §§606 and 606.5.

    e. Provide grab bars of proper horizontal length or spacing as required along the rear or side wall in compliance with the standards set forth in 2010 ADAAG §§604, 604.5, 604.5.1 and 604.5.2

    f. Provide an element or object that does not protrude greater than 4" into a pathway or space of travel situated between 27" and 80" high in compliance with the standards set forth in 2010 ADAAG §§204, 307, 307.1, 307.2.

**B. Unisex Restroom East:**

    a. Provide a gate or door with a continuous opening pressure of no greater than 5 lbs., not to exceed the limits for a person with a disability in compliance

    with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4.

b. Provide a swinging door or gate with proper maneuvering clearance(s) that does comply with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.3, 404.2.4 and 404.2.4.1.

c. Provide sufficient clear floor space around a water closet without any obstructing elements in this space in compliance with the standards set forth in 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1.

d. Provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in compliance with the standards set forth in 2010 ADAAG §§606 and 606.5.

e. Provide an element or object that does not protrude greater than 4" into a pathway or space of travel situated between 27" and 80" high in compliance with the standards set forth in 2010 ADAAG §§204, 307, 307.1, 307.2.

## C. Paper Napkin Dispenser:

Provide paper towel dispenser at the correct height above the finished floor in compliance with the standards set forth in 2010 ADAAG §§606, 606.1 and 308.